UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VALIANT LEON WHITE, JR.,

               Plaintiff,

v.

UNKNOWN PERRON et al.,

               Defendants.
_____/

Case No. 2:20-cv-247

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Rule 21 of the Federal Rules of Civil Procedure provides that, on motion by a party or on its own motion, the Court may at any time drop or add parties or sever a claim on grounds of misjoinder. *Id.* Applying that standard, the Court will drop Defendants Magahey, Gugin, Manitowabi, Newcomb, Burke, Miller, and McLean from the action on grounds of misjoinder.

Further, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim all of Plaintiff's federal and state claims against Defendants Hemming and Bernhardt. The Court will also dismiss, for failure to state a

claim, the following claims against the remaining Defendants:  Plaintiff's due process, equal protection, and Eighth Amendment claims; Plaintiff's retaliation claim against Defendant Perron, based on the issuance of the out-of-place misconduct; and all of Plaintiff's state-law claims.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues the following URF officials:   Correctional Officers Unknown Perron, Unknown Hemming, Unknown Behm, Unknown Bernhardt, Unknown Magahey, Unknown Gugin, Unknown Manitowabi, Sheri Newcomb, Unknown Burke, J. Miller, and M. McLean; and Hearings Investigator Unknown Durant.

Plaintiff makes several unrelated sets of allegations against various Defendants that occurred over the space of three years.  The Court will discuss each in turn:

### A.  Defendants Perron, Bernhardt, Hemming, Behm & Durant

In his first set of allegations, Plaintiff states that, within the MDOC, formal count is conducted at 4:00 p.m., and mass movement is supposed to begin at 4:30 for food service, big yard, and the weight pit.  Plaintiff complains, however, that URF, unlike other MDOC facilities, does not clear the count until 4:45 p.m., and mass movement cannot begin until after count has cleared.

On January 10, 2019, URF conducted an emergency mobilization that officially lasted from 2:25 p.m. to 2:52 p.m.  However, Defendant Perron kept A-Unit locked down from 2:25 p.m. to 4:45 p.m., purportedly in order to punish prisoners.  During this two-hour period,

prisoners were not allowed to go to the bathroom.  Plaintiff alleges that other units were allowed normal operations from 2:52 p.m. until 4:00 p.m., so they were allowed to use the bathrooms.

At approximately 4:40 p.m., Plaintiff told Defendant Perron that he had an emergency and needed to use the bathroom.  Perron denied Plaintiff's request to use the bathroom. Plaintiff then threatened to write a grievance against Defendant Perron, alleging inhumane treatment.  Defendant Perron allegedly responded, "Oh yeah, you want to write grievances huh?[ Y]ou got a ticket coming."  (Compl., ECF No. 1, PageID.6.)  Perron wrote an out-of-place ticket against Plaintiff on January 11, 2019.  Plaintiff claims the ticket violated prison policy permitting inmates to use the bathroom if it takes more than half an hour to clear count.  Plaintiff acknowledges that he went to the bathroom after Defendant Perron denied him permission to do so.  On January 15, 2019, Plaintiff was found guilty of the misconduct charge and was sanctioned to three days of toplock.

Plaintiff contends that the ticket amounted to adverse action for his protected conduct in threatening to file a grievance.  Plaintiff alleges that Defendants Bernhardt and Hemming acted in collusion with Defendant Perron.  He contends that, on January 11, he refused to attend Defendant Bernhardt's review of the ticket, which he alleges he was permitted to do under policy.  When Defendant Perron saw that Plaintiff was refusing to attend, Perron identified Plaintiff to Defendant Hemming, a rookie officer, inducing Hemming to instruct Plaintiff to attend that hearing.  Hemming spoke with Plaintiff, strongly encouraging him to attend, but Plaintiff refused, citing his right to do so under MDOC Policy Directive (PD) 03.03.105(H) and claiming that requiring him to do so was retaliatory in violation of MDOC PD 03.02.130(L).  At that point, Defendant Perron stepped out of the prison counselor's office and told Defendant Hemming, "Go give Mr. White a Direct Order to Report to Annex to Sgt. Bernhardt for ticket review so that we

3

can put him in the hole." (*Id.*, PageID.7.)  Defendant Hemming went to Plaintiff's cubicle and

stated, "C/O Perron and Sgt. Bernhardt told me to give you a DIRECT ORDER to report to the

Annex for Ticket Review, or you're going to the hole." (*Id.*)  Plaintiff alleges that Defendant

conspired with Defendants Perron and Hemming to order Plaintiff to the annex.

Plaintiff complied with the direct order and went to meet with Defendant Bernhardt.

When he returned, Plaintiff asked Defendant Perron why he had told Defendant Hemming to issue

a direct order in violation of policy.  Perron responded that Plaintiff had written a grievance against

him and that a direct order supersedes policy.  Plaintiff alleges that officers at URF and Kinross

Correctional Facility (KCF) routinely use threats of misconduct for failing to comply with direct

orders and being out of place in order to retaliate against prisoners and punish them for filing

grievances.

At the Warden's Forum meeting on February 13 and March 13, 2019, prisoner

representative Jarvis attempted to raise the use of the improper practice by Defendants Perron,

Hemming, and Bernhardt.  Plaintiff complains that Administrative Assistant Robert Beaulieu (not

a defendant) prevented the question being raised to the warden and thereafter to be on record in

Lansing.

On February 14, Defendant Perron allegedly took adverse action against Plaintiff

for his grievances against Defendants Perron, Bernhardt, Hemming, and Manitowabi and his threat

to grieve Defendant Behm by instructing Defendant Behm to write a sexual misconduct charge

against Plaintiff.   Working with Perron, Defendant Behm allegedly prepared a false sexual

misconduct charge against Plaintiff.

On February 22, Defendant Durant summoned Plaintiff's witnesses to the prisoner

counselor's office.  Durant removed two typewritten witness statements from the hearing package,

forged his own handwritten statements, and forged the witnesses' signatures.  Hearings Officer O'Brien found Plaintiff not guilty of the misconduct on March 1, 2019.  (Misconduct Hr'g Rep., ECF No. 1-4, PageID.42.)  Plaintiff requested a copy of his entire hearing packet, which Defendant Durant ignored.  Plaintiff alleges that the failure to produce a copy of the hearing packet was retaliatory, violated Defendant Durant's duty, and denied Plaintiff access to the courts.

Plaintiff alleges that Defendants Perron, Bernhardt, Hemming, Behm, & Durant violated the First Amendment, the Equal Protection Clause, the Due Process Clause, prison policy, the employee handbook, and state laws concerning forgery, Mich. Comp. Laws § 750.248(1); conspiracy, Mich. Comp. Laws § 750.157a; ethnic intimidation, Mich. Comp. Laws § 750.147b; and discriminatory harassment, Mich. Comp. Laws § 4.363.

### B.  Defendants Magahey & Gugin

In his next set of allegations, Plaintiff complains that Defendant Magahey colluded with Defendant Gugin to retaliate against Plaintiff, commit forgery, and engage in ethnic intimidation and discriminatory harassment.  Specifically, Plaintiff alleges that, on June 2, 2019, Defendant Gugin went in and out of the A-Unit bathrooms, looking over the stall partitions and allegedly harassing non-white prisoners.  At approximately 1:20 p.m., Defendant Gugin opened the bathroom door and asked what Plaintiff was doing.  Plaintiff stated that he was waiting for the bathroom, like prisoners always did, and asked why Defendant Gugin and other officers harassed African American prisoners by constantly entering the bathrooms.  Plaintiff threatened to write a grievance.  Twenty-five minutes later, Defendant Gugin stopped at Plaintiff's bunk, demanded Plaintiff's identification, and advised that, since Plaintiff wanted to complain, Gugin would give him something to complain about.  Defendant Gugin apparently signed a false misconduct charge for covering the bathroom window.  Plaintiff, however, alleges that Defendant Magahey both ordered Defendant Gugin to threaten Plaintiff and drafted the misconduct charge.  Five hours later,

at about 7:00 p.m., Defendant Magahey called Plaintiff to the officer's desk to conduct a hearing on Defendant Gugin's false misconduct ticket. Plaintiff told Magahey that he was a biased reviewer, not permitted by policy to conduct the review, and that Plaintiff intended to file a grievance. Plaintiff informed Magahey that he intended to wait until Prisoner Counselor Himmel came in at 8:00 p.m. in order to have his hearing. Because Magahey conducted the hearing, Plaintiff allegedly was "forced" to accept a one-day loss of privileges.

Plaintiff also complains that, on January 9, 2020, seven months after the first allegations against Defendant Magahey, Defendant Magahey, told Plaintiff that he could not change the television channel to BET (Black Entertainment Television). Plaintiff responded that slavery days were over and prisoners could watch what they wanted. Defendant Magahey talked with Officer Webb (not a defendant), who agreed that the station should be blocked. The following day, Defendant Magahey turned the television off, stating that he would begin writing major misconduct charges for changing the channel to BET. Plaintiff alleges that Defendant Magahey's actions were retaliatory for his prior protected speech.

### C. Defendant Manitowabi

In his next set of allegations, Plaintiff complains that, on June 6, 2019, Defendant Manitowabi stopped Plaintiff when he tried to use the bathroom during mass movement at 4:44 p.m. Plaintiff alleges that prisoners routinely use the bathrooms during this period. Plaintiff told Manitowabi that he had an emergency and needed the bathroom, and he threatened to file a grievance against Defendant Manitowabi for cruel and unusual punishment. Plaintiff then used the bathroom, notwithstanding Manitowabi's order. Defendant Manitowabi told Plaintiff that he was going to segregation, ordered Plaintiff to leave his identification, and informed Plaintiff that the sergeant would be coming to get him.

6

### D.  Defendant Newcomb, Burke, Miller & McLean

Plaintiff next complains that, on November 24, 2017, Defendant Newcomb took adverse action against Plaintiff by forging a Class-III misconduct charge against Plaintiff for violating dining hall rules.  Defendant Newcomb's misconduct charged Plaintiff with sharing food with a prisoner who was not seated at the same table as Plaintiff.  Plaintiff states that, at the time of the incident, he had numerous complaints pending with the ombudsman's office about Defendant Newcomb, respecting retaliation, prohibited internet use, gambling, personal shopping, and dereliction of duty.  Plaintiff alleges that, during this period, Defendant Newcomb stalked, harassed, and retaliated against Plaintiff every day, resulting in at least a dozen pending grievances against her that were filed by Plaintiff.  Plaintiff also contends that Defendants McLean and Miller colluded with Newcomb by not conducting a thorough investigation into the misconduct charge.

Plaintiff alleges that three months later, on February 23, 2018, Defendant Newcomb threatened to send Plaintiff to segregation after Plaintiff threatened to file a grievance against Newcomb for calling the food-service officer's desk to allegedly harass Plaintiff.  Plaintiff also complains that on July 5, 2019, Defendant Newcomb interfered with Plaintiff's ability to scan his identification card at the lunch food service.

In addition, Plaintiff alleges, on May 10, 2020, at 8:00 a.m., Plaintiff requested expedited legal forms from Defendant Newcomb in order to meet a filing deadline on May 11, 2020.  Newcomb told Plaintiff that they did not hand out forms on the weekend and that Plaintiff would need to show her his legal papers.  Plaintiff stated that he would file a grievance.  Then he showed Newcomb his papers.  She read the papers but refused to send out the forms.  Plaintiff complains that Newcomb's action was retaliatory and violated his right to access the courts.

On November 12, 2020, while A-Unit was on quarantine because of an outbreak of COVID-19 cases among officers and prisoners, Defendant Newcomb ordered Plaintiff out of the

7

supply closet, to which Plaintiff claims he was entitled, in order to obtain bleach and sanitizer. Newcomb stated that he could not have the supplies because he had filed grievances against her. On November 19, 2020, despite the fact that officers had been ordered not to shake-down prisoners to avoid spread of the coronavirus, Defendant Newcomb began pulling Plaintiff's property out of his footlocker to search for contraband. Plaintiff alleges a violation of prison policy and retaliation.

Plaintiff generally alleges that Defendants Newcomb, Burke, and other staff have a custom or practice of interfering with prisoners' rights to exhaust their administrative remedies and by communicating their desired outcomes on grievances and misconducts to the decisionmakers.

Plaintiff complains that Defendants' actions violated the First Amendment, the Equal Protection Clause, the Due Process Clause, prison policy, the employee handbook, and state laws concerning forgery, Mich. Comp. Laws § 750.248(1); conspiracy, Mich. Comp. Laws § 750.157a; ethnic intimidation, Mich. Comp. Laws § 750.147b; and discriminatory harassment, Mich. Comp. Laws § 4.363.

Plaintiff seeks injunctive relief in a variety of forms, including the issuance of criminal charges, together with nominal, compensatory, and punitive damages.

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action."  Rule 18(a) states:  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted).  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'"  *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–137 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

10

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendants Perron, Hemming, Behm, Bernhardt, and Durant are the first five Defendants named in the action, and Plaintiff's first set of allegations names these Defendants. That set of allegations concerns events arising out of an incident on January 10, 2019, during which Defendant Perron kept A-Unit locked down for two hours, when other units were released to use the bathroom for at least one hour during that period. Defendant Perron also refused Plaintiff's request to use the bathroom five minutes before the lockdown was due to clear. Plaintiff threatened to file a grievance and proceeded to go to the bathroom anyway. Plaintiff alleges that Defendants

Hemming, Bernhardt, and Behm colluded with Defendant Perron to retaliate against Plaintiff with respect to the misconduct charge that was filed and the orders related to his attendance at the misconduct hearing.  Plaintiff makes no allegations against any other Defendant that are related to the first set of allegations.   As a result, no claim against any of the other Defendants is transactionally related to his claims against Defendants Perron, Hemming, Behm, Bernhardt and Durant.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  *Id.*   Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008)

(quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute

13

of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Most of the conduct about which Plaintiff complains occurred in 2019 and 2020. Those claims fall well within the three-year statute of limitations.  Plaintiff, however, has made two allegations against Defendant Newcomb that may be impacted by the statute of limitations. Plaintiff alleges that Defendant Newcomb retaliated against him and harassed him on November 24, 2017 and February 23, 2018.  Although the two cited actions occurred over three years ago, with the benefit of tolling during the administrative-exhaustion period, *Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in his limitations period to file a new complaint against Defendant Newcomb that includes the two older claims.[1]  Plaintiff therefore will not suffer gratuitous harm if his claims against Defendant Newcomb are dismissed without prejudice.

The Court therefore will exercise its discretion under Rule 21 and dismiss without prejudice to the institution of a new, separate lawsuits by Plaintiff against Defendants Magahey, Gugin, Manitowabi, Newcomb, Burke, Miller and McLean.  *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at

---

[1] It is not clear from the complaint and attachments how long the period of limitations was tolled for the purpose of exhaustion, though that period did not begin any earlier than the date of the first incident, which occurred on November 24, 2017, and likely extended for at least four to six weeks.  *See* MDOC PD 03.02.130 (describing the three steps of the grievance process and the timing for each).  Moreover, Plaintiff is entitled to tolling for the period during which this action was pending, beginning on the date his complaint was filed—on or about November 30, 2020, the date on which he signed it—until the date of entry of this order.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that a prisoner's complaint is deemed filed on the date it is signed).  If he acts promptly, Plaintiff has sufficient time to bring his earliest claims against Defendant Newcomb.

14

*3 (same).  If Plaintiff wishes to proceed with his claims against the improperly joined Defendants, he shall do so by filing new civil actions on the forms provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.  Plaintiff is warned that his future actions may not be brought in an omnibus complaint such as this one.  Any new complaint shall contain only allegations about properly joined claims against properly joined Defendants.[2]   The Court directs the Clerk to send to Plaintiff three copies of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

---

[2] As fully discussed in this opinion, Plaintiff is cautioned that his allegations in any future action must be limited to claims against Defendants that are transactionally related to one another.  Not all of the dismissed claims and Defendants would be properly brought in a single new action.

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under

28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.

Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

## IV.    Prison Policy & Due Process

Plaintiff alleges that Defendants Perron, Bernhardt, Hemming, Behm and Durant

violated a number of prison policies governing, *inter alia*, the following matters:  the duration

prisoners should spend in their cells for emergency mobilization and prisoner count; the policy

governing when a prisoner can use the bathroom; the policy governing a prisoner's right to refuse

to attend a misconduct hearing; the prohibition on retaliation; and the prohibition on the

falsification of documents.  Plaintiff also alleges that the actions violated the prison employee

handbook.

To the extent Plaintiff invokes prison or employee policies, he fails to allege a

constitutional claim.  Claims under § 1983 can only be brought for "deprivations of rights secured

by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

16

924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

## V. False Misconduct—Due Process

Plaintiff suggests that he was deprived of due process by the filing of false Class-I and Class-II misconduct charges.[3] Specifically, he suggests that Defendants Behm and Perron, by issuing him a false misconduct charge for sexual misconduct,[4] violated his right to due process.

---

[3] Under MDOC PD 03.03.105 ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

[4] A sexual-misconduct charge is a major-misconduct or Class-I misconduct charge. *See* MDOC PD 03.03.105, Attach. A.

He also arguably suggests that Defendants Perron and Hemming violated his right to due process by issuing him a misconduct ticket for being out of place.[5]

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps:  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

---

[5] An out-of-place misconduct charge is a Class-II, minor-misconduct charge.  *See* MDOC PD 03.03.105, Attach. B; *see also* Attach. A to Compl., ECF No. 1-1, PageID.31.

Plaintiff's Class-I and Class-II misconduct charges had the potential to affect a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.  As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence.

Neither Plaintiff's minor nor major misconduct charges could have resulted in the loss of good-time credits.  Prisoners are deprived of good time, disciplinary credits, or disciplinary time only when they are found guilty of a Class-I misconduct.  *See* MDOC PD 03.03.105, ¶ AAAA. The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).  Plaintiff, therefore, fails to state a due process claim arising from his Class-II misconduct conviction for being out of place.

With respect to the Class-I misconduct charge, the Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits and disciplinary time.[6]  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits applicable to prisoners convicted for crimes occurring after April 1, 1987, does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole

---

[6] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  Mich. Comp. Laws § 800.33(5).  For some crimes committed after December 15, 1998, and all crimes committed after December 15, 2000, Michigan prisoners are "penalized" with "disciplinary time" under a statute that abolished the disciplinary credit system.  Mich. Comp. Laws § 800.34.  Plaintiff is serving one sentence for a crime committed in 1992, for which he would receive disciplinary credit, and three other sentences for crimes committed in 2010, for which he would receive disciplinary time.

eligibility, which remains discretionary with the parole board.  481 F.3d at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).  Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time, a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (R. & R.) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits or disciplinary time.  *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

In addition, Plaintiff has not alleged that he faced a "significant and atypical deprivation," even on the Class-I misconduct charge.  Plaintiff was not convicted of the Class-I charge, though he could have been sanctioned with up to 10 days of punitive segregation.  MDOC PD 03.03.105, Attach. D.  Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship."  *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship.  *Sandin*,

515 U.S. at 484.  Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process.  *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant).  It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest.  *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).  Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant.  *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

On his Class-I misconduct charge, Plaintiff faced possible confinement in segregation for 10 days—far less than the 30-day period the *Sandin* Court held was *not* atypical and significant.  Thus, the Class-I misconduct charge did not trigger a right to due process.  Moreover, because Plaintiff faced no possible segregation time on the Class-II misconduct charge, as the maximum sanction for that type of offense is five days of toplock, *see* MDOC PD 03.03.105, Attach. D, the Class-II misconduct charge necessarily failed to implicate a right to due process.

For these reasons, Plaintiff's due process claims based on allegedly false misconduct charges fail to state a due process claim.

21

**VI.     Interference with Grievances & Warden's Forum—Due Process**

Plaintiff vaguely alleges that Defendants interfered with the grievance process.  He also claims that they interfered with the raising of one of his claims in the Warden's Forum.

To the extent that Plaintiff intends to raise a due process claim based on alleged interference with his right to pursue grievances, Plaintiff fails to state a claim.  As earlier discussed, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum,* 427 U.S. at 225.  To demonstrate a liberty interest, Plaintiff must show either that the deprivation he suffered "will inevitably affect the duration of his sentence" or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Plaintiff lacks a due process interest in having issues raised in the Warden's Forum, because he has no liberty interest in that state-created procedure.  The Warden's Forum is an alternate place to raise prisoner concerns, independent of the individual grievance process.  But, as with any grievance procedure, prisoners do not have a protected due process right

to an effective grievance procedure.  *See Hewitt*, 459 U.S. at 467; *Walker,* 128 F. App'x at. 445.

Plaintiff's inability to raise an issue in the Warden's Forum falls well short of the sort of

deprivation that may be considered atypical and significant.  *See Sandin*, 515 U.S. at 486–87.  In

fact, the courts of this circuit repeatedly have concluded that even the loss of a position as a

Warden's Forum representative implicates no due process interest.  *See, e.g., Miller v. Berghuis*,

2013 WL 8445625 *2 (W.D. Mich. 2013); *Reeves v. Chapman*, 2011 WL 2518843, *2 (E.D. Mich.

2011); *see also Cromer v. Dominguez*, 103 F. App'x 570 (6th Cir. 2004) (finding no liberty interest

in position as a unit representative on warden's forum); *Newsom v. Norris*, 888 F2d 371, 374 (6th

Cir. 1989) (finding no liberty interest in continued appointment to position of inmate adviser);

*VanDiver v. Martin*, 48 Fed. App'x 517, *2 (6th Cir. 2002) (inmate "has no liberty or property

interest in his position . . . on the warden's forum"); *Green v. Waldren*, No. 99-1561, 2000 WL

876765, at *1 (6th Cir. June 23, 2000) (inmate "had no constitutional right to hold the position of

block or prisoner representative.").

       Plaintiff therefore fails to state a due process claim based on any interference with

his grievances or refusals to permit an issue to be raised in the Warden's Forum.

## VII.   Equal Protection

       Plaintiff broadly alleges that the actions of Defendants Perron, Bernhardt,

Hemming, Behm and Durant violated his rights under the Equal Protection Clause of the

Fourteenth Amendment.  He recites the Employee Handbook Rule 3, which bars discrimination

on the basis of race, color, national origin, disability, sex, sexual orientation, height, weight,

marital status, disability, genetic information, or partisan consideration.  By this recitation, he

implies that his treatment was based on racial discrimination, though he makes no specific

allegation concerning the alleged basis for Defendants' discriminatory acts.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate," and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440-41.  However, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff arguably suggests that Defendants acted with a racially discriminatory motive in not clearing A-Unit in a timely fashion, denying his request to use the bathroom on a single occasion, requiring him to attend a misconduct hearing, and writing misconduct charges for being out of place and sexual misconduct.  However, he alleges no facts that would support that suggestion.  It therefore is not at all clear that Plaintiff's equal-protection claim is entitled to strict scrutiny.

Nevertheless, regardless of the standard of review under the Equal Protection Clause, Plaintiff's equal protection claim fails.  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To

state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class or has no rational basis.'"). Plaintiff's allegations are woefully insufficient to demonstrate that he suffered disparate treatment in relation to similarly situated others. To be similarly situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).

While Plaintiff alleges discrimination, his allegations are conclusory. He does not identify any comparator or how Defendants' actions demonstrated discrimination. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's conclusory allegation that he was denied equal protection therefore fails to state a claim.

## VIII. Eighth Amendment

Plaintiff claims that Defendants' actions violated the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually

26

knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff utterly fails to indicate what part of Defendants' actions constituted deliberate indifference to a substantial risk of serious harm to Plaintiff.  To the extent that he intends to suggest that he was kept in his cell for two hours without a bathroom break and that Defendant Perron denied his request to use the bathroom on a single occasion, his allegations fall well short of meeting the Eighth Amendment standard.  Allegations about temporary inconveniences—such as a two-hour delay in being able to use a bathroom—do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, does not violate the Eighth Amendment); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)). Moreover, the one-time denial of a prisoner's request to use the toilet is insufficient, by itself, to state a claim under the Eighth Amendment.  *See Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter Cnty. Jail*, No. 86-5565, 1987 WL 36997 (6th Cir. Apr. 10, 1987)).

Similarly, being directly ordered to go to a particular location for a misconduct review does not rise to a "condition[] intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348.  It, too, amounts to mere inconvenience.

In addition, to the extent that Plaintiff claims that Defendants verbally harassed him, his allegations also fail to state an Eighth Amendment claim.  Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey*, 832 F.2d at 955; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."). Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim against any Defendant arising from the alleged verbal abuse.

Finally, to the extent that Plaintiff alleges that Defendants Behm and Perron falsely charged him with a sexual-misconduct ticket, which could have led to his placement in punitive

segregation for up to 10 days or to toplock and/or loss of privileges,[7] he fails to state an Eighth Amendment claim.  Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347).  Although it is clear that Plaintiff could have been denied certain privileges as a result of a finding of guilt and punitive segregation, he does not allege or show that he was or could have been denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges caused by administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiff therefore fails to state an Eighth Amendment claim against any Defendant.

## IX.    Retaliation

Plaintiff complains that Defendants Perron, Hemming, Behm, Bernhardt and Durant took a number of actions in retaliation for Plaintiff having filed or threatened to file prisoner grievances.  He alleges that Defendant Perron wrote an out-of-place misconduct ticket after Plaintiff threatened to file a misconduct charge in response to Perron's refusal to allow Plaintiff to go to the bathroom.  Plaintiff also alleges that Defendants Hemming, Perron and Bernhardt retaliated against him for threatening to file a grievance by issuing him a direct order to go to his misconduct review before Defendant Bernhardt.  In addition, Plaintiff alleges that Defendants Perron and Behm retaliated against him for filing grievances by writing a false sexual-misconduct charge against him.  Finally, Plaintiff alleges that Defendant Durant retaliated against him by

---

[7] *See* MDOC PD 03.03.105, Attach. A.

falsifying affidavits during the investigation of the sexual-misconduct charge, which exposed Plaintiff to a risk of conviction on that charge.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). The Court concludes that Plaintiff's allegations concerning his grievances and threats

to file grievances are sufficient to meet the first prong of the retaliation standard with respect to all of his allegations of retaliation.

However, Plaintiff's allegation that Defendants Perron, Hemming and Bernhardt wrongfully gave him a direct order to attend a misconduct review falls short of meeting the second prong of the retaliation standard.  To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Requiring a prisoner to attend a misconduct review is objectively incapable of deterring any reasonable person from exercising his rights.  Plaintiff therefore fails to state a retaliation claim based on the actions of Perron, Hemming, and Bernhardt to force him to attend his misconduct hearing.  Because Plaintiff makes no other allegations against Defendants Hemming and Bernhardt, Plaintiff's retaliation claims against them will be dismissed with prejudice for failure to state a claim.

The Court concludes that Plaintiff's other allegations of adverse action by Defendants Perron, Behm and Durant are sufficient to meet the second prong of the retaliation standard.  However, the Court finds that Plaintiff's first allegation of retaliation against Defendant Perron—that Perron issued Plaintiff and out-of-place misconduct charge in retaliation for Plaintiff's threat to file a grievance—fails to meet the third prong of the retaliation standard.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).  Moreover, claims of retaliation "are especially prone to abuse.  It is easy for a prisoner to allege bad motive and thereby embroil prison officials in protracted yet groundless litigation."  *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).

Here, Plaintiff's allegation against Defendant Perron rests entirely on a conclusory allegation of temporal proximity—that the out-of-place misconduct followed his threat to file a grievance.  Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  The Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse

conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a near-constant threatener and filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Although Plaintiff threatened to file a grievance against Defendant Perron very shortly before Perron issued the out-of-place misconduct ticket, Plaintiff admits that he went to the bathroom when the light was on for count and after Defendant Perron told him he could not go. An "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). Defendant Perron did not issue a ticket to Plaintiff until Plaintiff actually committed the misconduct by going to the bathroom after Perron explicitly denied him permission to do so. And Plaintiff did not dispute that he was guilty of the misconduct. Under these circumstances, Plaintiff's claim that Defendant Perron had a retaliatory motive is nothing more than a conclusory assertion, resting on a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court therefore will dismiss Plaintiff's retaliation claim against Defendant Perron, based on the issuance of the out-of-place misconduct.

Upon initial review, however, the Court concludes that Plaintiff's allegation that Defendants Perron and Behm issued a false sexual-misconduct charge against Plaintiff in

retaliation for his grievances is sufficient to state a claim.  The Court also concludes that Plaintiff's allegation that Defendant Durant falsified evidence in the investigation of that charge is sufficient to state a retaliation claim.

## X.      State-Law Claims

Plaintiff purports to bring a variety of state-law claims against Defendants, relying on criminal statutes prohibiting a variety of conduct:  forgery, Mich. Comp. Laws § 750.248(1); conspiracy, Mich. Comp. Laws § 750.157a; ethnic intimidation, Mich. Comp. Laws § 750.147b; and discriminatory harassment, Mich. Comp. Laws § 4.363.   Plaintiff alleges that Defendants Perron, Henning, Bernhardt, Behm and Durant committed forgery by either filing false misconduct charges against him or forging witness statements in relation to a misconduct charge, in violation of Mich. Comp. Laws § 750.248(1).   Plaintiff also alleges that these Defendants criminally conspired against him in violation of Mich. Comp. Laws § 750.157a, ethnically intimidated him in violation of Mich. Comp. Laws § 750.147b, and discriminatorily harassed him in violation of Mich. Comp. Laws § 4.363.

### 1.      Forgery

Ordinarily, "a private right of action will not be inferred" under Michigan jurisprudence when a new right or duty is created by a statute that "provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer."  *Claire–Ann Co. v. Christenson & Christenson, Inc.,* 566 N.W.2d 4, 6 (Mich. App. 1997); *see also Epps v. 4 Quarters Restoration LLC,* 872 N.W.2d 412, 420 (Mich. 2015) ("By expressly conferring enforcement authority only on prosecutors and the Attorney General, the statute would seem by implication not to confer similar authority on a private party.").  Instead, a private right of action can be inferred only where the legislature intended to create such an action. *Lash v. City of Traverse City*, 735 N.W.2d 628, 636–37 (2007).  Moreover,

34

where a statute provides for remedies, those remedies are exclusive unless "plainly inadequate." *Pompey v. Gen. Motors Corp.*, 189 N.W.2d 243, 251 n.14 (1971).

This Court and other courts have concluded that Michigan's criminal forgery statute, Mich. Comp. Laws § 750.248, "does not explicitly authorize a private cause of action." *Langley v. Chase Home Fin., LLC*, No. 1:10-CV-604, 2011 WL 1150772, at *6 (W.D. Mich. Mar. 11, 2011), *R. & R. adopted*, No. 1:10-CV-604, 2011 WL 1130926 (W.D. Mich. Mar. 28, 2011); *see also Goldman v. McRoberts*, No. 2:17-cv-14093, 2018 WL 6177917, at *3 (E.D. Mich. Nov. 27, 2018) (citing *Langley*); *Wheeler v. McKelvy*, No. 14-cv-14672, 2015 WL 3441179, at *3 (E.D. Mich. May 28, 2015); *c.f. Am. Postal Workers Union, AFL-CIO, Detroit Loc. v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("the general rule is that a private right of action is not maintainable under a criminal statute."); *Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *9 (E.D. Mich. Sept. 13, 2007) (holding that Michigan criminal offense of larceny and embezzlement do not create a private right of action) (citing *Am. Postal Workers Union* in its discussion of Mich. Comp. Laws §§ 750.356 and 750.174).

Because Mich. Comp. Laws § 750.248 does not authorize a private right of action, Plaintiff fails to state a claim under that statute against any Defendant.

### 2.     Conspiracy

Plaintiff claims that Defendants are liable under Michigan's criminal conspiracy statute, Mich. Comp. Laws § 750.248, for conspiring to deprive him of his rights.  As with Plaintiff's invocation of the crime of forgery, Mich. Comp. Laws § 750.157a does not expressly authorize a private right of action.

Section 750.157a contains no clear expression of legislative intent to create a private right of action.  *Lash*, 735 N.W.2d at 636–37 (requiring clear legislative intent to create a private right of action).  Instead, the statute expressly authorizes only the criminal prosecution of

35

the offense and sets sanctions of imprisonment and fines.  *Pompey*, 189 N.W.2d at 251 n.14 (recognizing that the existence of defined statutory remedies precludes the finding of others, unless the remedies are plainly inadequate).

Criminal conspiracy is a separate and distinct crime, independent of the underlying offense.  *See People v. Braylock*, 324 N.W.2d 530 (Mich. Ct. App. 1982) (citing *People v. Norwood*, 20 N.W.2d 185, 187 (Mich. 1945)).  Moreover, criminal conspiracy under Michigan law is complete upon the formation of an unlawful agreement to do or accomplish some criminal or unlawful act; no overt act is required.  *People v. Hamp*, 312 N.W.2d 175, 180 (1981) (citing *People v. Scotts*, 263 N.W.2d 272, 278 (Mich. Ct. App. 1977)); *People v. Wright*, 298 N.W.2d 857, 864 (Mich. Ct. App. 1980).

In contrast, proof of a civil conspiracy under Michigan law requires more than evidence of an agreement.  To prove a civil conspiracy, a plaintiff must show that "'there is a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'"  *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)); *see also Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992).  A "[c]ivil conspiracy is not a claim of its own; 'it is necessary to prove a separate, actionable tort.'" *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2020 WL 6382862, at *9 (E.D. Mich. Oct. 30, 2020) (quoting *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003), and *Early Detection Center, P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)); *see also McCarthy v. Sosnick*, No. 293482, 2011 WL 4424344 (Mich. Ct. App. Sept. 22, 2011) (reiterating that "any civil conspiracy must be accompanied by a separate, actionable

tort."); Michigan Non-Standard Jury Instr. Civil § 15:1 (listing as an element that must be proved: "The defendant committed a separate, actionable tort as part of the conspiracy.").

In light of these distinctions, inferring a private right of action under the criminal-conspiracy statute would be at odds with the established requirements for proof of a civil conspiracy.  Moreover, in the absence of any legislative intent to create an alternate and contradictory civil offense, the Court finds that a private right of action is not available under Mich. Comp. Laws § 750.157a.

### 3.   Discriminatory Harassment

Plaintiff claims that Defendants Perron, Behm and Durant engaged in discriminatory harassment, in violation of Mich. Comp. Laws § 4.363, which prohibits certain types of interference with the duties of the Legislative Corrections Ombudsman:

> (1) A prisoner must not be penalized in any way by an official or the department as a result of filing a complaint, complaining to a legislator, or cooperating with the ombudsman in investigating a complaint.
>
> (2) A person or the department shall not hinder the lawful actions of the ombudsman or employees of the office, or willfully refuse to comply with lawful demands of the office.
>
> (3)  The department shall not take disciplinary action against an employee for communicating with the ombudsman.

*Id.*  Plaintiff complains that Defendants violated the first of the three prohibitions.

Plaintiff fails to demonstrate that the administrative provisions established by the Michigan legislature to oversee the Department of Corrections creates a private right of action for any individual.  As discussed, Michigan law does not infer a private right of action when a new right or duty is created by a statute that "provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer."  *Claire–Ann Co.,* 566 N.W.2d at 6.  The provision Plaintiff invokes is part of the Act

establishing the Legislative Corrections Ombudsman, which establishes a comprehensive administrative remedy.  *See* Mich. Comp. Laws, Ch. 4, §§ 4.351–4.364.

The purpose of the Act creating the Legislative Corrections Ombudsman is set forth in the preface to the act:

> to create the office of the legislative corrections ombudsman; to prescribe the powers and duties of the office, the ombudsman, the legislative council, and the department of corrections; and to provide remedies from administrative acts.

Mich. Pub. Acts, No. 46 (eff. May 16, 1975). The Act prescribes express remedies for alleged violations:

> (1) The ombudsman may commence an investigation upon either of the following:
>
> (a) Receipt of a complaint from a prisoner, a legislator, or on the ombudsman's own initiative, concerning an administrative act that is alleged to be contrary to law or contrary to departmental policy.
>
> (b) The ombudsman's own initiative for significant prisoner health and safety issues, correctional facility security, and public safety, and other matters for which there is no effective administrative remedy.
>
> (2) Subject to approval of the council, the ombudsman shall establish procedures for receiving and processing complaints, conducting investigations, holding hearings, and reporting the findings resulting from the investigations.

Mich. Comp. Laws § 4.354.  Following investigation, the ombudsman may request the legislative council[8] to hold a hearing on particular complaints.  Mich. Comp. Laws § 4.358.  And the ombudsman must

> prepare and submit a report of the findings of an investigation and make recommendations to the council . . . if the ombudsman finds any of the following:
>
> (a) A matter that should be considered by the department.
>
> (b) An administrative act that should be modified or canceled.
>
> (c) A statute or rule that should be altered.

---

[8] The provision references the "council," which is defined in Mich. Comp. Laws § 4.351(c) as the "legislative council established under section 15 of article IV of the state constitution of 1963."  *Id.*

(d) Administrative acts for which justification is necessary.

(e) Significant prisoner health and safety issues as determined by the council.

(f) Any other significant concerns as determined by the council.

Mich. Comp. Laws § 4.360.

Thus, the Act creates an administrative scheme that provides for investigation and reporting to the Michigan legislative council to take action on wrongful acts. Nothing in the statute suggests that the legislature had an intent to create a private right of action. As a consequence, Plaintiff fails to state a claim under Mich. Comp. Laws § 4.363.

### 4.      Ethnic Intimidation

Plaintiff alleges that Defendants Perron, Behm and Durant engaged in ethnic intimidation, in violation of Mich. Comp. Laws § 750.147b, when they kept the unit on lockdown too long, refused to allow Plaintiff to use the bathroom on one occasion, threatened charging him with disobeying a direct order if he did not go to the misconduct ticket review, falsifying a sexual-misconduct ticket, and falsifying witness statements during the investigation of the misconduct charge.

Section 750.147b expressly provides a private right of action and authorizes the recovery of damages and attorney fees. Mich. Comp. Laws § 750.147b(3). The claim therefore is not barred simply because it is primarily a criminal statute.

Plaintiff, however, fails to allege facts that state a claim under the statute, which sets forth the following description of ethnic intimidation:

(1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:

(a) Causes physical contact with another person.

(b) Damages, destroys, or defaces any real or personal property of another person.

(c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

Mich. Comp. Laws § 750.147b(1).

Plaintiff's allegations utterly fail to meet the requirements of ethnic intimidation. First, he alleges no facts from which any reasonable person could conclude that any Defendant had the "specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin." *Id.* Instead, Plaintiff makes a conclusory claim that everything that happened to him was racially motivated. In the absence of any allegation of fact supporting that conclusion, however, Plaintiff's conclusory allegation fails to state a claim.

In addition, Plaintiff alleges no physical contact or threat of physical contact by any Defendant. Nor does Plaintiff allege that any Defendant damaged, destroyed, or defaced any real or personal property or threatened to do so. As a result, Plaintiff's allegations do not support the elements of § 750.147b(1)(a)–(b). *See Badlee v. Brighton Area Sch.*, 695 N.W.2d 521 (Mich. Ct. App. 2005) (affirming grant of directed verdict on allegations of racial slurs, unaccompanied by any actual or threatened harm to the plaintiff or plaintiff's property).

For both reasons, Plaintiff's allegations against Defendants fail to support an ethnic-intimidation claim.

## Conclusion

Under Rule 21 of the Federal Rules of Civil Procedure, the Court will drop Defendants Magahey, Gugin, Manitowabi, Newcomb, Burke, Miller and McLean from the action without prejudice on grounds of misjoinder. In addition, having conducted the review of the remaining claims as required by the Prison Litigation Reform Act, the Court determines that Defendants Hemming and Barnhard will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss, for failure to state a claim,

the following claims against the remaining Defendants:  Plaintiff's due process, equal protection, and Eighth Amendment claims; Plaintiff's retaliation claim against Defendant Perron, based on the issuance of the out-of-place misconduct; and all of Plaintiff's state-law claims.  Plaintiff's retaliation claims against Defendants Perron, Behm and Durant, based on their roles in the fabricated sexual-misconduct charge, remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 30, 2021                                  /s/ Janet T. Neff
                                                         Janet T. Neff
                                                         United States District Judge

41