UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VALIANT LEON
WHITE #225440, JR.,                                    Case No. 2:20-cv-00247

        Plaintiff,                                    Hon. Janet T. Neff
                                                       U.S. District Judge

    v.

UNKNOWN PERRON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses summary judgment motions filed by Plaintiff (ECF No. 41) and the three remaining Defendants (ECF No. 47).

The Plaintiff in this case – state Prisoner Valiant Leon White – filed this civil rights action pursuant to 42 U.S.C. § 1983 for conduct that occurred while he was incarcerated at the Chippewa Correctional Facility (URF).  (ECF No. 1.)  White originally asserted claims against twelve Defendants, each of whom was employed by the Michigan Department of Corrections (MDOC).  On August 30, 2021, the Court issued an opinion and order dismissing all of White's claims except for one First Amendment retaliation claim against URF Corrections Officers (COs) Behm and Perron and URF Hearings Investigator Durant.  (ECF Nos. 3 and 4.)  Plaintiff's verified complaint alleged that the two COs retaliated against him by working

1

together to write a false sexual misconduct ticket.   A portion of this allegedly false

misconduct ticket is shown below.



(ECF No. 1-4, PageID.43.)

White also asserts that Hearings Investigator Durant retaliated against him

after investigating the misconduct ticket by removing two type-written statements

from the hearing package, forging his own handwritten statements, and forging

witness signatures.   (ECF No. 1, PageID.8.)   White also says that Hearings

Investigator Durant refused to provide him with a copy of the hearing packet.   (*Id.*,

PageID.10.)

On March 1, 2019, White was found not guilty of the misconduct by the

Hearing Officer because the Hearing Officer could not conclude who was more

credible.   The Hearing Officer explained his findings as follows:

The hearing is commenced by the watching of the video that is found to be confidential for the security of the facility.  The video shows Officer Behm making rounds and looking in each cell as she walks down the hall and comes back up.  The prisoner is informed.  Unless otherwise noted all documents are one page.  The prisoner is present and the misconduct report is reviewed with him along with his statement she lied because he said he would turn her in for using the computer for on line shopping and two other officers, Sgt Bernhardt and Officer Perron told her to because of his grievances and lawsuit against them, Prisoner Day's statement he did not see White do anything, Prisoner Alexander's statement that he heard Oficer Behm say she was writing White a sexaul misconduct and Officer Perron said if she needed help writing it he would help because he is the guy who is always writing grievances, and Prisoner Stanton's statement he was not present. Prisoner White states that he was sleeping and submits a statement saying it was vague.  Prisoner has nothing further to add.  No further evidence is needed.  Prisoner is informed of the findings, sanctions and sanction dates and told he will receive the report later.

**REASONS FOR FINDINGS**

Prisoner White states that he was asleep at this time and the porters came and told him that Perron told her to write him up because of his grievances.  Officer Behm states that she was making rounds and saw him with a hand over his groin and he licked his lips and winked at her.  The video shows her making rounds and looking in each cube but she never stops or reacts in anyway to anything in that cube.  The porter witnesses are not consistent with White's statement as he said that Perron told her to write the sexual misconduct but one said he was not present and the other said she was writing it and the other said he would help her if she needed it which is not the same.  Since the evidence does not support either's version, I can not find either statement more credible than 50/50.  Therefore the charge is NOT upheld.

(ECF No. 1-4, PageID.42.)

The undersigned respectfully makes the following recommendations.   First, it is recommended that the Court dismiss White's retaliation claim against Durant because the record before the Court shows that Durant took no adverse action against White while conducting the misconduct ticket investigation.    Second, it is recommended that the Court deny the motion as to COs Behm and Perron because they failed to establish the lack of genuine issues of material fact entitling them to summary judgment on White's retaliation claim.    Third, it is recommended that the Court dismiss the official capacity claims asserted against all Defendants.    Finally, it is recommended that the Court deny White's motion for summary judgment because White has failed to show that there exists no genuine issue of material fact entitling him to judgment against Defendants.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## III.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### a.  Protected Conduct

Defendants first argue that White failed to engage in protected conduct by threatening to write a grievance on CO Behm for her use of the internet at work to conduct personal business.  White complained that this conduct jeopardized his personal safety and cost taxpayers' money.

The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'"  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).  "If the grievances are frivolous, however, this right is not protected."  *Id.*  Prisoners "cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives."  *Smith*

*v. Campbell*, 250 F.3d 1032, 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Beyond the general acknowledgment that grievances used to abuse or manipulate the grievance system are frivolous, limited authority exists as to what renders a grievance frivolous. As acknowledged by the Sixth Circuit in *Maben v. Thelen*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d 252, 264–65 (6th Cir. 2018) (collecting cases).[1] This Court has also found grievances involving "verifiably untrue" allegations to be frivolous. *Chrzan v. Mackay*, No. 1:19-cv-116, 2020 WL 7774741, at *3 (W.D. Mich. Nov. 30, 2020) (finding that the plaintiff's grievance was frivolous where a video recording of the underlying event contradicted the allegations in the grievance), *report and recommendation adopted*, No. 1:19-cv-116, 2020 WL 7773419 (W.D. Mich. Dec. 30, 2020). Similarly, the Sixth Circuit held that a prisoner's grievance complaining about conduct that had no impact on the prisoner was frivolous. *Thaddeus-X v. Love*, No. 98-2211, 2000 WL 712354, at *2–3 (6th Cir. May 22, 2000) (finding that a grievance complaining about a prison employee eating

---

[1]    For example, in *White–Bey v. Griggs*, the Sixth Circuit found that a prisoner's grievance that he was provided a typewriter rather than a computer was frivolous. 43 Fed. App'x 792, 794 (6th Cir. 2002).

at his desk was "patently frivolous as the defendant's conduct had no adverse impact on [the plaintiff]").

Similarly, in the opinion of the undersigned, White's threat to file a grievance against CO Behm for using the internet had no impact on White and would not be considered protected conduct because it would be a frivolous grievance.

White, however, alleged that he had filed several other grievances. Defendants did not address allegations regarding White's other grievances in their motion.   As shown below, White's complaint alleges that the Defendants' adverse action was based upon multiple grievances that he had filed, and not just because he had threatened to file a grievance due to CO Behm's use of the internet:

> 16. On 2-14-19 approximately 9:30p.m., Def. Perron took 'ADVERSE ACTION' in direct relation to plaintiffs pending grievances against himself, Def. Bernhardt, Def. Hemming, Def. Manitowabi, See URF-1901-0108-17A, URF-1901-0182-27A, URF-1901-0183-17A, URF-1901-0184-28A, URF-1901-0185-28A. Retaliated in Collusion with Def. Behm, Def. Bernhardt, stated to Def. Behm: "All he does is write grievances on us, we've been trying to get rid of him anyway, why don't you write a sexual misconduct on him, sense he wants to be a smart ass and write you up for being on the internet, you can write several kinds of sexual misconduct reports if you want to. We will see how he handles this." Def. Behm stated: "Well Black guys always keep their hands in their pants." Def. Perron sat at the desk, coerced, assisted Def. Behm to Forge a False Misconduct Report after earlier meeting and Colluding with Def. Bernhardt in the Annex Building before returning to Collude with Def. Behm to Forge this False Misconduct. See Video Camera Footage of Def. Perron meeting with Def. Bernhardt approximately 7:00p.m. prior to 9:30p.m. Coercing Def. Behm to Forge a False Misconduct Report.

(ECF No. 1, PageID.8.)

In the opinion of the undersigned, White asserted sufficient allegations in his complaint showing that he had engaged in protected conduct by filing several grievances before he received the allegedly false misconduct ticket.   Those claims are not disputed in Defendants' motion.

**b.  Adverse Action**

**1.  CO Behm and CO Perron**

Defendants CO Behm and CO Perron do not contest that the misconduct ticket satisfies the adverse action element of a retaliation claim.

**2.  Investigator Durant**

White claims that Investigator Durant discussed the misconduct ticket with Prisoner Day and Prisoner Alexander.   White says that Investigator Durant received typed statements from these witnesses, but that he omitted the typed statements in his hearing report and instead provided the Hearing Officer with forged handwritten statements that he had signed.

Investigator Durant attests that White provided names of the two prisoner witnesses and he spoke with those witnesses as part of his investigation.   (ECF No. 48-4, PageID.355 (Affidavit of Investigator Durant).)   Investigator Durant states that he was not provided with type-written statements from either Prisoner Day or Prisoner Alexander.   (*Id.*)   Investigator Durant did, however, include a type-written statement he received from Prisoner Stanton in the hearing packet.   (*Id.*)

White, however, says that Prisoner Day provided the following type-written statement dated February 18, 2019, on February 22, 2019:

STATEMENT OF MR. DAY #540029

On 2/14/19 at 9:30p.m., I was awake in my Cube. At no time did Mr. White have his hands on his groin area.

At no time did Mr. White have his tongue out of his mouth licking his lips.

At no time did Mr. White wink his eyes at anyone.

(ECF No. 56-3, PageID.443, ECF No. 1-4, PageID.49.)

White says that Investigator Durant wrote the following statement after interviewing Prisoner Day:

3. Were you at the scene of the incident or violation? __yes__

4. Exactly what did you see, hear, or have to do with? _____

_____ I did not see White do any thing when the Officer was there.

_____

_____

_____ 2/21. Durant

(ECF No. 56-3, PageID.439, ECF No. 1-4, PageID.45.)

White says that Prisoner Alexander submitted the following type-written statement, dated February 19, 2019, on February 22, 2019:

STATEMENT OF ALEXANDER #667724

1. On 2/14/19 approximately 9:30p.m. in A-Unit Lobby, I observed and heard C/O Perron state to C/O Behm: "All he does is write grievances on us, we've been wanting to get rid of him anyway, why don't you write a sexual misconduct on him."
2. During that time I was working my assignment and just happen to be near the Officer Desk when Officer Perron made this statement to C/O Behm. See Video.

(ECF No. 56-3, PageID.444, ECF No. 1-4, PageID.50.)

And White says that Investigator Durant wrote the following report after interviewing Prisoner Alexander:

3. Were you at the scene of the incident or violation? _____ yes.

4. Exactly what did you see, hear, or have to do with? _____

_____ I was in the Lobby as a unit porter working. I heard c/o Behm tell c/o Perron that she was writing "White" a sexuall misconduct and c/o Perron stated "if you need help writing it let me know. I'll help because he's the one always writing grievances on us. I was not near the cube at the time of the incident _____

_____ 4/. Durant

(ECF No. 56-3, PageID.440, ECF No. 1-4, PageID.46.)

In the opinion of the undersigned, White has failed to establish a genuine issue of fact regarding whether Investigator Durant took adverse actions against him by investigating the misconduct ticket and submitting an investigation packet to the Hearing Officer.    White's specifically says that Durant removed type-written statements by Day and Alexander, "forged" replacement statements for them and forged their signatures.    (ECF No. 1, PageID.10.)    As an initial matter, it is undisputed that Durant interviewed Prisoners Day and Alexander.    In addition, the reports submitted by Durant are not forgeries; they are what Durant says they are: his own reports of his interviews with Day and Alexander, which, as shown, bear his signature.    So White is simply wrong when he says that Durant forged the two reports he submitted.    But the more significant logical problem White faces is that

10

Durant's interview reports are still favorable to White.   White fails to explain why a favorable interview report still constitutes an adverse action.   Indeed, the undersigned cannot read Durant's reports of his interviews with Day and Alexander and conclude that these reports constituted an adverse action taken against White that would deter a person of ordinary firmness from engaging in some form of protected conduct.   Thus, the undersigned concludes that White has failed to establish a genuine issue of material fact with regard to his retaliation claim against Durant.   It is respectfully recommended that the Court dismiss Investigator Durant from this action.

### c.   Causation – CO Behm and CO Perron

CO Behm says that she would have issued the misconduct ticket regardless of whether White had engaged in protected conduct.   CO Behm asserts that on February 14, 2019, she observed White when he "smiled, winked and licked his lips while having his hand over his groin area."   (ECF No. 1-4, PageID.43; ECF No. 48, PageID.337.)   CO Behm argues that she has demonstrated that she would have written the misconduct ticket regardless of White's protected activity.   Conversely, White denies this conduct and as set forth above he was found not guilty of the misconduct ticket after a hearing.

CO Perron asserts that he never encouraged CO Behm to write a false misconduct ticket and never wrote a false misconduct ticket during his career as a corrections officer.   (ECF No. 48-3, PageID.352 (Affidavit of CO Perron).)   CO Behm confirms that CO Perron never encouraged her to file false misconduct tickets.   (ECF

No. 48-2, PageID.348 (Affidavit of CO Behm).)    White claims that CO Perron solicited CO Behm to issue a false sexual misconduct ticket against him to have him placed into segregation due to his grievance submissions.    (ECF No. 56-6, PageID.453 (Affidavit of White).)

In the opinion of the undersigned, Defendants Behm and Perron's denials of White's allegations that they were both involved in submitting a false misconduct ticket against him, fail to establish that no genuine issue of fact exists on the retaliation element of causation.

## IV.  Qualified Immunity

Alternatively, Defendants argue that they are entitled to the defense of qualified immunity.   Defendants argue that they are entitled to qualified immunity for the exact same reasons that they argue that no genuine issue of fact exists to support White's retaliation claims against them.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.* (citing *Pearson*, 555 U.S. at 232).   A court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).   A government official is entitled to qualified immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S.

13

603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id*., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

For the reasons discussed above, it is recommended that Investigator Durant is alternatively entitled to qualified immunity because no genuine issue of fact exists to establish that he engaged in retaliatory action against White.   Additionally, for the reasons stated, it is recommended that the Court deny Behm and Perron's argument that they are entitled to qualified immunity because they have failed to show that there exists a lack of a genuine issue of fact on White's retaliation claim against them.

## V.  Official Capacity Claim

To the extent that White seeks damages based on claims against Defendants in their official capacities, his claims are barred by the Eleventh Amendment.   The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials.   *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989).   To the extent that White seeks money damages, costs, and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[2]

---

[2]    "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity."  *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).   Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law."  *Id.*

## VI.    White's Motion for Summary Judgment

White argues that there is no dispute that CO Behm and CO Perron filed a false misconduct ticket against him and that he is therefore entitled to summary judgment.    (ECF No. 41, PageID.284.)    White further argues that Defendants are precluded from arguing otherwise based upon the Hearing Officer's finding that he was not guilty of the misconduct.    First, as set forth above, there are unresolved factual issues on White's retaliation claims against CO Behm and CO Perron. Second, White's claim that Defendants are precluded from arguing that the misconduct ticket was not false based upon the Hearings Officer's findings is not supported by fact or law.    The Hearing Officer concluded only that the issue was in dispute and the evidence did not support either White's claim of innocence or Defendant's claim that he had engaged in sexual misconduct.    (ECF No. 1-4, PageID.42.)    In other words, the Hearing Officer made no factual findings on any issues involving the factual accuracy or inaccuracy of the misconduct ticket.    For the reasons explained, White has failed to show that there exists no genuine issue of fact entitling him to summary judgment.

---

White's requests for injunctive relief against Defendants involve alleged violations of state law and requests to issue felony complaints under state law. (ECF No. 1, PageID.27.)    White's state law claims have been dismissed and these requests are no longer pending in this case. (ECF No. 3 and 4.)

## VII.  Recommendation

It is respectfully recommended that the Court grant in part and deny in part Defendants CO Behm, CO Perron, and Investigator Durant's motion for summary judgment as follows:

1) deny CO Behm's and CO Perron's motion for summary judgment because genuine issues of material fact exist on White's retaliation claim against them,

2) grant Investigator Durant's motion for summary judgment because no genuine issue of material fact exists on the retaliation claim against him because he took no adverse action against White, and

3) grant the motion against CO Behm, CO Perron, and Investigator Durant with respect to claims against them in their official capacities.

It is further respectfully recommended that the Court deny White's motion for summary judgment because White failed to show that no genuine issue of material fact exists which would entitle him to judgment as a matter of law.

Dated:    February 24, 2023                       /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).